## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| | : | |
| | : | |
| Plaintiff, | : | Civil Action No. |
| v. | : | **JURY DEMAND** |
| | : | |
| | : | |
| JAMES A. EVANS, JR., | : | |
| d/b/a CASHFLOWBOT.COM, | : | |
| d/b/a DOLLARMONSTER, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |
| | : | |

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff, Securities and Exchange Commission (the "Commission"), files this Complaint and alleges as follows:

## OVERVIEW

1. This matter involves a Ponzi scheme that occurred between on or about January 2012 and April 2014 and was perpetrated by Defendant James A. Evans, Jr. ("Evans"), operating a website at the domain name "Cashflowbot.com," using the business name "DollarMonster."

2.    DollarMonster promoted itself to investors as a "private fund" with an opaque investment strategy where investors would make "big profits."

3.    Although the DollarMonster website disclosed that "profit" payouts were linked to DollarMonster's receipt of additional investment funds, it misrepresented to investors that DollarMonster had paid out investment returns exceeding the money that investors had contributed, indicating that the enterprise was somehow generating investment profits and not just paying investors from the receipt of new funds.

4.    Beginning in late 2013, the DollarMonster website misrepresented to investors that DollarMonster was a "financial advisor" with more than 120 management teams and $38 million in assets under management.

5.    The DollarMonster website further misrepresented to investors that DollarMonster managed a hedge fund that purchased stocks on behalf of investors in the fund.

6.    A later iteration of the website misrepresented to investors that DollarMonster was a "private Holding Company" that invested in assets such as gold, silver, real estate, stocks and bonds.

2

7.     Additionally, the website purported to offer investors the opportunity to purchase shares of stock in the Holding Company, and to pay investors monthly dividend payments.

8.     Between January 2012 and April 2014, Defendant Evans operated DollarMonster as a Ponzi scheme.

9.     Defendant Evans raised approximately $1.15 million from more than 3,000 investors.  He redistributed approximately $1.06 million to certain investors as purported investment returns and withdrew approximately $30,405 for his own personal use.

10.     Ultimately, Defendant Evans' scheme collapsed.  While some investors received payouts, others lost all invested funds.

## **VIOLATIONS**

11.     Defendant Evans has engaged and, unless restrained and enjoined by this Court, will continue to engage in acts and practices that constitute and will constitute violations of Sections 5(a), 5(c) and 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a), 77e(c) and 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and

Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and Section 206(4) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.20694)-8].

## JURISDICTION AND VENUE

12.    The Commission brings this action pursuant to Sections 20 and 22 of the Securities Act [15 U.S.C. §§ 77t and 77v], Sections 21(d) and 21(e) of the Exchange Act [15 U.S.C. §§ 78u(d) and 78u(e)] and Sections 209 and 214 of the Advisers Act [15 U.S.C. §§ 80b-9 and 80b-14] to enjoin Defendant Evans from engaging in the transactions, acts, practices, and courses of business alleged in this Complaint, and transactions, acts, practices, and courses of business of similar purport and object, for civil penalties and for other equitable relief.

13.    This Court has jurisdiction over this action pursuant to Sections 20 and 22 of the Securities Act [15 U.S.C. § 77t and 77v], Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa] and Section 214 of the Advisers Act [15 U.S.C. 80b-14].

14.    Defendant Evans, directly and indirectly, made use of the mails, the means and instruments of transportation and communication in interstate commerce and

the means and instrumentalities of interstate commerce in connection with the transactions, acts, practices, and courses of business alleged in this Complaint and made use of the mails and the means or instrumentalities of interstate commerce to effect transactions, or to induce or to attempt to induce the purchase or sale of securities alleged in this Complaint.

15.    Venue is proper in this Court as certain of the transactions, acts, practices, and courses of business constituting violations of the Securities Act, the Exchange Act and the Advisers Act occurred in the Northern District of Georgia.    In addition, Evans resides in the Northern District of Georgia.

16.    Defendant Evans, unless restrained and enjoined by this Court, will continue to engage in the transactions, acts, practices, and courses of business alleged in this Complaint, and in transactions, acts, practices, and courses of business of similar purport and object.

**THE DEFENDANT**

17.    Defendant Evans, 33, resides in Villa Rica, Georgia.  He is not registered with the Commission in any capacity and does not hold any securities licenses.

**THE FRAUDULENT SCHEME**

5

18.     From at least January 2012, Defendant Evans operated DollarMonster as an internet-based investment accessible through a website using the domain name Cashflowbot.com.

19.     Although Defendant Evans did not provide his name to the domain registrar for Cashflowbot.com, the phone number provided to the domain registrar matches the phone number that Defendant Evans provided to his bank.  Defendant Evans also paid the domain registrar for the DollarMonster website by using a personal credit card, issued in his name.

20.     In order to invest through DollarMonster, investors were instructed to open accounts with SolidPayTrust.com, an unaffiliated payment transmitter that provided email-based fund transfer services.

21.     Defendant Evans opened the Solid Trust account for DollarMonster in his own name, and linked that account to his personal bank account, over which he maintained exclusive control.

22.     The underlying mechanics of the DollarMonster scheme were simple: investors deposited funds into their Solid Trust accounts and then transferred those funds to a Solid Trust account controlled by Defendant Evans.  Defendant Evans

then transferred a portion of the funds to his personal bank account, and also redistributed funds to investors' Solid Trust accounts as purported investment returns.

23.    Investors were able to log into their DollarMonster accounts, which included the purported dollar value of their accounts (without identifying any underlying securities or ownership interests), including purported earnings.

24.    The DollarMonster website did not contain language limiting investors to accredited or sophisticated investors, nor did the process of registration or creating an account require information indicating whether investors were sophisticated or accredited.

25.    To the contrary, at one point in time the DollarMonster website stated that the sign-up process required "no paperwork" and at another stated that the program was "available to everyone regardless … of how much you have to invest."

26.    The DollarMonster website provided an opaque description of a purportedly "reliable" investment opportunity where investors would make "big" profits.

27.    The website misrepresented DollarMonster by identifying it as "a successful

group of experienced Internet Investors" and by saying that "DollarMonster has been working as a private fund since 2003, and since 2004 have opened up to the public worldwide" [sic].

28.    The website misrepresented that DollarMonster's mission was "to provide our investors with a great opportunity for their funds – by investing as prudently as possible – to gain high rates in return."

29.    The website also misrepresented that "DollarMonster is a secure investment project, designed specifically for people who want to get reliable, and profitable returns on their investments."

30.    The website promised investors that "you'll make big profits, because we have a winning combination of professional investment expertise, not to mention speed, flexibility and a rigorously-disciplined investment approach."

31.    The DollarMonster website disclosed that the payout of profits was linked to DollarMonster's receipt of additional investment funds, stating as follows: "Whenever you invest, your funds are added to the Investment Pool.   The Investment Pool goes off to pay the next person in line to be paid – giving them a return of 200%, and you are then put at the end of the line.   Each time more

investments come in, more people get paid and the line moves forward.   If investors do not invest, then the line doesn't move."

32.    However, the website also specifically misrepresented that DollarMonster had paid out investment returns exceeding the amount of money that investors had contributed, indicating, falsely, that the enterprise was somehow generating investment profits and not just paying investors through the receipts of new investor funds.

33.    Furthermore, the DollarMonster website did not disclose anywhere that if investors stopped placing funds into the "Investment Pool," the scheme would collapse and investors could suffer a complete loss of investment.

34.    To the contrary, the website misrepresented that operators of DollarMonster would keep the system going by contributing their own associated profits, stating that DollarMonster "invests its own profits in the program in order to keep the fund/system going."

35.    The website also stated that DollarMonster charged a fee of 2.5% of the funds invested, plus a $2.24 transaction fee.

36.    At some point in 2013, the DollarMonster website was dramatically revised

to identify the specific investments purportedly made with investor funds.

37.   In   October   2013,   the   DollarMonster   website   misrepresented   that DollarMonster was a "financial advisor" with more than 120 management teams and $38 million of assets under management."

38.   In November 2013, the DollarMonster website further misrepresented that DollarMonster managed a hedge fund that purchased stocks on behalf of investors in the fund.

39.   In this regard, the website falsely claimed that DollarMonster had used investor funds to profitably invest in stocks with a market value of $3.2 million.

40.   The website further falsely claimed that DollarMonster investors could share in the profits with a simple click of the "cashout" and "withdraw money" buttons on the Cashflowbot.com website.

41.   Finally,   a   subsequent   version   of   the   website   in   February   2014 misrepresented DollarMonster as "a private Holding Company" that invested in securities and commodities, including gold, silver, real estate, stocks, and bonds.

42.   In July 2014, shortly after the Commission issued a subpoena to Defendant Evans as part of its investigation into the matter, the DollarMonster website ceased

operation.

43.    On information and belief, Defendant Evans is continuing to raise funds from investors.

44.    In this regard, shortly after Defendant Evans shut down the DollarMonster website, his home address was used anonymously with the same domain registrar to establish a new website using the domain name Theinvestorsexchange.com.

45.    Theinvestorsexchange.com purports to match investors looking for an investment return with individuals and companies that need capital.

46.    Theinvestorsexchange.com website also lists various advertisements for purported investment opportunities, with links to email addresses that potential investors can contact for further information.

47.    One of the advertisements is linked to Defendant Evans, and reads as follows:  "I am seeking serious investors only for a new business venture I am working on.  I am working on a new club (i own a few already) in New York, NY. And I am looking for investors for this.  Serious only please [sic]."

48.    The contact email address listed for the above-referenced advertisement is Evans' email address.

## COUNT I—UNREGISTERED OFFERING OF SECURITIES

### Violations of Sections 5(a) and 5(c) of the Securities Act
### [15 U.S.C. § 77e(a) and 77e(c)]

49.     Paragraphs 1 through 48 are hereby re-alleged and are incorporated herein by reference.

50.     No registration statement has been filed or is in effect with the Commission pursuant to the Securities Act and no exemption from registration exists with respect to the transactions described herein.

51.     Between on or about January 2012 and April 2014, Defendant Evans, has:

(a)     made use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, through the use or medium of a prospectus or otherwise;

(b)     carried securities or caused such securities to be carried through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or for delivery after sale; and

(c)     made use of the means or instruments of transportation or communication in interstate commerce or of the mails to offer or sell or

offer to buy securities, through the use or medium of any prospectus or

otherwise,

without a registration statement having been filed with the Commission as to such

securities.

52.     By reason of the foregoing, Defendant Evans, directly and indirectly, has

violated Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and

77e(c)].

## COUNT II—FRAUD

### Violations of Sections 17(a)(1) of the Securities Act
### [15 U.S.C. § 77q(a)(1)]

53.     Paragraphs 1 through 48 are hereby re-alleged and are incorporated herein

by reference.

54.     Between on or about January 2012 and April 2014, Defendant Evans, in the

offer and sale of the securities described herein, by the use of means and instruments

of transportation and communication in interstate commerce and by use of the mails,

directly and indirectly, employed devices, schemes and artifices to defraud

purchasers of such securities, all as more particularly described above.

55.    Defendant Evans knowingly, intentionally, and/or recklessly engaged in the aforementioned devices, schemes and artifices to defraud.

56.    While engaging in the course of conduct described above, Defendant Evans acted with scienter, that is, with an intent to deceive, manipulate or defraud or with a severely reckless disregard for the truth.

57.    By reason of the foregoing, Defendant Evans, directly and indirectly, has violated and, unless enjoined, will continue to violate Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## COUNT III—FRAUD

### Violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act
### [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)]

58.    Paragraphs 1 through 48 are hereby re-alleged and are incorporated herein by reference.

59.    Between on or about January 2012 and April 2014, Defendant Evans, in the offer and sale of the securities described herein, by use of means and instruments of transportation and communication in interstate commerce and by use of the mails, directly and indirectly:

     a.    obtained money and property by means of untrue statements of material fact and omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

     b.    engaged in transactions, practices and courses of business which would and did operate as a fraud and deceit upon the purchasers of such securities,

all as more particularly described above.

60.    By reason of the foregoing, Defendant Evans, directly and indirectly, has violated and, unless enjoined, will continue to violate Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)].

## COUNT IV—FRAUD

### Violations of Section 10(b) of the Exchange Act
### [15 U.S.C. § 78j(b)]and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]

61.    Paragraphs 1 through 48 are hereby re-alleged and are incorporated herein by reference.

62.    Between on or about January 2012 and April 2014, Defendant Evans, in connection with the purchase and sale of securities described herein, by the use of

the means and instrumentalities of interstate commerce and by use of the mails,

directly and indirectly:

       a.    employed devices, schemes, and artifices to defraud;

       b.    made untrue statements of material facts and omitted to state

       material facts necessary in order to make the statements made, in light

       of the circumstances under which they were made, not misleading;

       and

       c.    engaged in acts, practices, and courses of business which

       would and did operate as a fraud and deceit upon the purchasers of

       such securities,

all as more particularly described above.

63.    Defendant Evans knowingly, intentionally, and/or recklessly engaged in the

aforementioned devices, schemes and artifices to defraud, made untrue statements

of material facts and omitted to state material facts, and engaged in fraudulent acts,

practices and courses of business.  In engaging in such conduct, Defendant Evans

acted with scienter, that is, with an intent to deceive, manipulate or defraud or with

a severely reckless disregard for the truth.

64.    By reason of the foregoing, Defendant Evans, directly and indirectly, has violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## COUNT V—FRAUD

### Violations of Section 206(4) of the Advisers Act and Rule 206(4)-8 thereunder
### [15 U.S.C. § 80(b)-6(4) and 17 C.F.R. § 275.206(4)-8]

65.    Paragraphs 1 through 48 are hereby re-alleged and are incorporated herein by reference.

66.    Defendant Evans, doing business as DollarMonster, held DollarMonster out as the manager of a private fund that had "opened to the public worldwide." Through DollarMonster, Defendant Evans's advice involved securities, as at least one iteration of the DollarMonster website specifically misrepresented that the fund purchased stocks on behalf of investors.

67.    Defendant Evans received compensation by withdrawing more than $30,000 of investor funds for his personal use, roughly matching the disclosed fees of 2.5% of funds invested.  Accordingly, Defendant Evans was both an investment adviser,

and as a representative of DollarMonster, a person associated with an investment adviser.

68.   Between on or about January 2012 and April 2014, Defendant Evans, in connection with the purchase and sale of pooled investment vehicles described herein:

    a.   made untrue statements of material facts and/or omitted to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading, and

    b.   engaged in acts, practices, and courses of business that were fraudulent, deceptive, and/or manipulative, all as more particularly described above.

69.   Defendant Evans knowingly, intentionally, and/or recklessly made untrue statements of material facts and omitted to state material facts, and engaged in fraudulent acts, practices and courses of business.  In engaging in such conduct, Defendant Evans acted with scienter, that is, with an intent to deceive, manipulate or defraud or with reckless disregard for the truth.

70.    By reason of the foregoing, Defendant Evans, directly and indirectly, has violated and, unless enjoined, will continue to violate Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully prays for:

## **I.**

Findings of Fact and Conclusions of Law pursuant to Rule 52 of the Federal Rules of Civil Procedure, finding that Defendant Evans committed the violations alleged herein.

## **II.**

An order expediting discovery to determine whether Defendant Evans is conducting an ongoing offering fraud and to preserve the status quo.

## **III.**

A permanent injunction enjoining Defendant Evans, his officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with him who receive actual notice of the injunction, by personal

service or otherwise, and each of them, from violating, directly or indirectly, Sections 5(a), 5(c) and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a), e(c) and q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.20694)-8].

## IV.

An order requiring an accounting of the use of the proceeds of the sales of the securities described in this complaint and the disgorgement by Defendant Evans of all ill-gotten gains or unjust enrichment with prejudgment interest, to effect the remedial purposes of the federal securities laws.

## V.

An order requiring the disgorgement by Defendant Evans of all ill-gotten gains or unjust enrichment with prejudgment interest, to effect the remedial purposes of the federal securities laws.

## VI.

An order pursuant to Section 20(d) of the Securities Act [15 U.S.C. §77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. §78u(d)(3)] and Section 209(e) of

the Advisers Act [15 U.S.C. § 80b-9(e)] imposing civil penalties against Defendant Evans.

**VII.**

Such other and further relief as this Court may deem just, equitable, and appropriate in connection with the enforcement of the federal securities laws and for the protection of investors.

Dated: April 13, 2015

        Respectfully submitted,

        */s/ Robert F. Schroeder*
        Robert F. Schroeder
        Senior Trial Counsel
        Georgia Bar No. 001390
        Email: SchroederR@sec.gov
        Tel:  (404) 942-0688

        M. Graham Loomis
        Regional Trial Counsel
        Georgia Bar No. 457868
        Email:  LoomisM@sec.gov

        COUNSEL FOR PLAINTIFF
        Securities and Exchange Commission
        950 East Paces Ferry Road NE, Suite 900
        Atlanta, Georgia 30326-1382
        Tel: (404) 842-7600
        Fax: (404) 842-7666