# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                **Plaintiff,**<br><br>      **v.**<br><br>JAMES A. EVANS, JR.,<br>d/b/a CASHFLOWBOT.COM,<br>d/b/a DOLLARMONSTER,<br><br>             **Defendants** | **Civil Action No.**<br><br>**1:15-cv-01118-RWS** |

## CORRECTED  DEFAULT JUDGMENT ORDER OF PERMANENT INJUNCTION AND OTHER RELIEF AS TO DEFENDANT JAMES A. EVANS, JR., d/b/a CASHFLOWBOT.COM, d/b/a DOLLARMONSTER

The United States Securities and Exchange Commission filed its complaint against Defendant James A. Evans, Jr., d/b/a Cashflowbot.com, d/b/a DollarMonster ("Defendant Evans") on April 13, 2015.   The SEC served Defendant Evans by personal service on April 16, 2015, and his answer or responsive pleading was due on May 7, 2015.  Defendant Evans failed to file an answer or other responsive pleading.  The SEC moved for entry of default against Defendant Evans on June 3, 2015, and the clerk of court entered default the same day.  The SEC has now moved the Court for a final judgment by default against

1

Defendant Evans. The Court hereby grants the SEC's motion and has set forth relevant findings of fact and conclusions of law below.

## FINDINGS AND CONCLUSIONS

Given the failure of Defendant Evans to answer or otherwise defend the allegations against him, the following allegations of the SEC's Complaint are now deemed to be true, and are made the findings of this Court:

Between on or about January 2012 and April 2014, Defendant Evans perpetrated a Ponzi scheme by operating a website at the domain name "Cashflowbot.com," using the business name "DollarMonster." (¶¶1 & 8, Complaint).

DollarMonster promoted itself to investors as a "private fund" with an opaque investment strategy where investors would make "big profits." (¶2, Complaint).

Although the DollarMonster website disclosed that "profit" payouts were linked to DollarMonster's receipt of additional investment funds, it misrepresented to investors that DollarMonster had paid out investment returns exceeding the money that investors had contributed, indicating that the enterprise was somehow generating investment profits and not just paying investors from the receipt of new funds. (¶3, Complaint).

Beginning in late 2013, the DollarMonster website misrepresented to investors that DollarMonster was a "financial advisor" with more than 120 management

2

teams and $38 million in assets under management. (¶4, Complaint).

The DollarMonster website further misrepresented to investors that DollarMonster managed a hedge fund that purchased stocks on behalf of investors in the fund. (¶5, Complaint).

A later iteration of the website misrepresented to investors that DollarMonster was a "private Holding Company" that invested in assets such as gold, silver, real estate, stocks and bonds. (¶6, Complaint).

Additionally, the website purported to offer investors the opportunity to purchase shares of stock in the Holding Company, and to pay investors monthly dividend payments. (¶7, Complaint).

Defendant Evans raised approximately $1.15 million from more than 3,000 investors. He redistributed approximately $1.06 million to certain investors as purported investment returns and withdrew approximately $30,405 for his own personal use. (¶9, Complaint).

Ultimately, Defendant Evans' scheme collapsed. While some investors received payouts, others lost all invested funds. (¶10, Complaint).

The Complaint sets forth violations of Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a), 77e(c)] in Count 1, Section 17(a)(1) of the Securities Act [15 U.S.C. §77q(a)(1)] in Count II, Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)] in Count

III, Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15
U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5] in Count IV,
and Section 206(4) of the Investment Advisers Act of 1940 ("Advisers Act") [15
U.S.C. § 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.20694)-8] in
Count V.  (¶11, Complaint).

The SEC brought this action pursuant to Sections 20 and 22 of the Securities
Act [15 U.S.C. §§ 77t and 77v], Sections 21(d) and 21(e) of the Exchange Act [15
U.S.C. §§ 78u(d) and 78u(e)] and Sections 209 and 214 of the Advisers Act [15
U.S.C. §§ 80b-9 and 80b-14] to enjoin Defendant Evans from engaging in the
transactions, acts, practices, and courses of business alleged in the Complaint, and
transactions, acts, practices, and courses of business of similar purport and object, for
civil penalties and for other equitable relief.  (¶12, Complaint).

This Court has jurisdiction over this action pursuant to Sections 20 and 22 of
the Securities Act [15 U.S.C. § 77t and 77v], Sections 21(d), 21(e), and 27 of the
Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa] and Section 214 of the
Advisers Act [15 U.S.C. 80b-14]. (¶13, Complaint).

Defendant Evans, directly and indirectly, made use of the mails, the means and
instruments of transportation and communication in interstate commerce and the
means and instrumentalities of interstate commerce in connection with the
transactions, acts, practices, and courses of business alleged in the Complaint and

4

made use of the mails and the means or instrumentalities of interstate commerce to effect transactions, or to induce or to attempt to induce the purchase or sale of securities alleged in this Complaint. (¶14, Complaint).

Venue is proper in this Court as certain of the transactions, acts, practices, and courses of business constituting violations of the Securities Act, the Exchange Act and the Advisers Act occurred in the Northern District of Georgia. In addition, Defendant Evans resides in the Northern District of Georgia. (¶16, Complaint).

Defendant Evans, 33, resides in resides in Villa Rica, Georgia. He is not registered with the SEC in any capacity and does not hold any securities licenses. (¶17, Complaint).

From at least January 2012, Defendant Evans operated DollarMonster as an internet-based investment accessible through a website using the domain name Cashflowbot.com. (¶18, Complaint).

Although Defendant Evans did not provide his name to the domain registrar for Cashflowbot.com, the phone number provided to it matches the phone number that Defendant Evans provided to his bank. Defendant Evans also paid the domain registrar for the DollarMonster website by using a personal credit card, issued in his name. (¶19, Complaint).

In order to invest through DollarMonster, investors were instructed to open accounts with SolidPayTrust.com, an unaffiliated payment transmitter that

provided email-based fund transfer services.  (¶20, Complaint).

Defendant Evans opened the Solid Trust account for DollarMonster in his own name, and linked that account to his personal bank account, over which he maintained exclusive control.  (¶21, Complaint).

The underlying mechanics of the DollarMonster scheme were simple: investors deposited funds into their Solid Trust accounts and then transferred those funds to a Solid Trust account controlled by Defendant Evans.  Defendant Evans then transferred a portion of the funds to his personal bank account, and also redistributed funds to investors' Solid Trust accounts as purported investment returns.  (¶22, Complaint).

Investors were able to log into their DollarMonster accounts, which included the purported dollar value of their accounts (without identifying any underlying securities or ownership interests), including purported earnings.  (¶23, Complaint).

The DollarMonster website did not contain language limiting investors to accredited or sophisticated investors, nor did the process of registration or creating an account require information indicating whether investors were sophisticated or accredited.  (¶24, Complaint).

To the contrary, at one point in time the DollarMonster website stated that the sign-up process required "no paperwork" and at another stated that the program was "available to everyone regardless … of how much you have to invest."  (¶25,

Complaint).

The DollarMonster website provided an opaque description of a purportedly "reliable" investment opportunity whereby investors would make "big" profits. (¶26, Complaint).

The website misrepresented DollarMonster by identifying it as "a successful group of experienced Internet Investors" and by saying that "DollarMonster has been working as a private fund since 2003, and since 2004 have opened up to the public worldwide" [sic]. (¶27, Complaint).

The website misrepresented that DollarMonster's mission was "to provide our investors with a great opportunity for their funds – by investing as prudently as possible – to gain high rates in return." (¶28, Complaint).

The website also misrepresented that "DollarMonster is a secure investment project, designed specifically for people who want to get reliable, and profitable returns on their investments." (¶29, Complaint).

The website promised investors that "you'll make big profits, because we have a winning combination of professional investment expertise, not to mention speed, flexibility and a rigorously-disciplined investment approach." (¶30, Complaint).

The DollarMonster website disclosed that the payout of profits was linked to DollarMonster's receipt of additional investment funds, stating as follows: "Whenever you invest, your funds are added to the Investment Pool.   The

Investment Pool goes off to pay the next person in line to be paid – giving them a return of 200%, and you are then put at the end of the line. Each time more investments come in, more people get paid and the line moves forward. If investors do not invest, then the line doesn't move." (¶31, Complaint).

However, the website also specifically misrepresented that DollarMonster had paid out investment returns exceeding the amount of money that investors had contributed, indicating, falsely, that the enterprise was somehow generating investment profits and not just paying investors through the receipts of new investor funds. (¶32, Complaint).

Furthermore, the DollarMonster website did not disclose anywhere that if investors stopped placing funds into the "Investment Pool," the scheme would collapse and investors could suffer a complete loss of investment. (¶33, Complaint).

To the contrary, the website misrepresented that operators of DollarMonster would keep the system going by contributing their own associated profits, stating that DollarMonster "invests its own profits in the program in order to keep the fund/system going." (¶34, Complaint).

The website also stated that DollarMonster charged a fee of 2.5% of the funds invested, plus a $2.24 transaction fee. (¶35, Complaint).

At some point in 2013, the DollarMonster website was dramatically revised to

identify the specific investments purportedly made with investor funds.  (¶36, Complaint).

In October 2013, the DollarMonster website misrepresented that DollarMonster was a "financial advisor" with more than 120 management teams and $38 million of assets under management." (¶37, Complaint).

In November 2013, the DollarMonster website further misrepresented that DollarMonster managed a hedge fund that purchased stocks on behalf of investors in the fund. (¶38, Complaint).

In this regard, the website falsely claimed that DollarMonster had used investor funds to profitably invest in stocks with a market value of $3.2 million.  (¶39, Complaint).

The website further falsely claimed that DollarMonster investors could share in the profits with a simple click of the "cashout" and "withdraw money" buttons on the Cashflowbot.com website. (¶40, Complaint).

Finally, a subsequent version of the website in February 2014 misrepresented DollarMonster as "a private Holding Company" that invested in securities and commodities, including gold, silver, real estate, stocks, and bonds.  (¶41, Complaint).

In July 2014, shortly after the SEC issued a subpoena to Defendant Evans as part of its investigation into the matter, the DollarMonster website ceased

operation. (¶42, Complaint).

On information and belief, Defendant Evans is continuing to raise funds from investors. (¶43, Complaint).

In this regard, shortly after Defendant Evans shut down the DollarMonster website, his home address was used anonymously with the same domain registrar to establish a new website using the domain name Theinvestorsexchange.com. (¶44, Complaint).

Theinvestorsexchange.com purports to match investors looking for an investment return with individuals and companies that need capital. (¶45, Complaint).

Theinvestorsexchange.com website also lists various advertisements for purported investment opportunities, with links to email addresses that potential investors can contact for further information. (¶46, Complaint).

One of the advertisements is linked to Defendant Evans, and reads as follows: "I am seeking serious investors only for a new business venture I am working on. I am working on a new club (i own a few already) in New York, NY. And I am looking for investors for this. Serious only please [sic]." (¶47, Complaint).

The contact email address listed for the above-referenced advertisement is Evans' email address. (¶48, Complaint).

Defendant Evans made use of the means or instruments of transportation or communication in interstate commerce or of the mails to offer or sell securities, without a registration statement having been filed with the SEC as to such securities. (¶51, Complaint).

Defendant Evans's advice involved securities, as at least one iteration of the DollarMonster website specifically misrepresented that the fund purchased stocks on behalf of investors. (¶66, Complaint).

Defendant Evans received compensation by withdrawing more than $30,000 of investor funds for his personal use, roughly matching the disclosed fees of 2.5% of funds invested. Accordingly, Defendant Evans was both an investment adviser, and as a representative of DollarMonster, a person associated with an investment adviser. (¶67, Complaint).

## I.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant Evans is permanently restrained and enjoined from violating Section 5 of the Securities Act [15 U.S.C. § 77e] by, directly or indirectly, in the absence of any applicable exemption:

    (a)    Unless a registration statement is in effect as to a security, making use of any means or instruments of transportation or communication in

interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise;

(b)     Unless a registration statement is in effect as to a security, carrying or causing to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale; or

(c)     Making use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed with the Commission as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under Section 8 of the Securities Act [15 U.S.C. § 77h].

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Final Judgment by personal service or otherwise: (a) Defendant Evan's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant Evans or with anyone described in (a).

## II.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant Evans is permanently restrained and enjoined from violating Section 17(a) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)] in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

    (a)    to employ any device, scheme, or artifice to defraud;

    (b)    to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

    (c)    to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser,

by directly or indirectly, disseminating false or misleading documents, materials, or information or making either orally or in writing, any false or misleading statement in any communication with any investor or prospective investor, about:

    (A)    the use of investor funds;

    (B)    the risk of investment; or

    (C)    the existence and/or nature of any profit generating enterprise

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Final Judgment by personal service or otherwise: (a) Defendant Evan's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant Evans or with anyone described in (a).

## III.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant Evans is permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5], by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

(a)     to employ any device, scheme, or artifice to defraud;

(b)     to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

14

(c)  to engage in any act, practice, or course of business which operates or

would operate as a fraud or deceit upon any person,

by directly or indirectly disseminating false or misleading documents, materials, or

information or making either orally or in writing, any false or misleading statement

in any communication with any investor or prospective investor, about:

(A)  the use of investor funds;

(B)  the risk of investment; and

(C)  the existence and/or nature of any profit generating enterprise

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as

provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also

binds the following who receive actual notice of this Final Judgment by personal

service or otherwise:  (a) Defendant Evan's officers, agents, servants, employees,

and attorneys; and (b) other persons in active concert or participation with

Defendant Evans or with anyone described in (a).

## IV.

IT IS FURTHER ORDERED ADJUDGED, AND DECREED that

Defendant Evans is permanently enjoined and restrained from violating

Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8

thereunder [17 C.F.R. § 275.206(4)-8] by:

    (a)    making untrue statements of material facts and/or omitting to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading to any investor or prospective investor in a pooled investment vehicle; or

    (b)    engaging in acts, practices, and courses of business that were fraudulent, deceptive, and/or manipulative with respect to any investor or prospective investor in a pooled investment vehicle,

by directly or indirectly disseminating false or misleading documents, materials, or information or making either orally or in writing, any false or misleading statement in any communication with any investor or prospective investor, about:

    (A)    the use of investor funds;

    (B)    the risk of investment; and

    (C)    the existence and/or nature of any profit generating enterprise

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Final Judgment by personal service or otherwise: (a) Defendant Evan's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant Evans or with anyone described in (a).

**V.**

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that disgorgement and prejudgment interest thereon against Defendant Evans is legally appropriate, to the extent it could be shown that he profited from the fraud outlined in the SEC's complaint. Defendant Evans obtained gross proceeds (that is, his "ill-gotten gains" or "profits") of $1,146,307.67 from the approximately 3,444 investors who contributed money through DollarMonster for the securities referenced in the Complaint. *See* Plaintiff's Motion for Default Judgment, Exhibit A. The prejudgment interest on that amount is $116,942.42. *Id*. Thus, the Court orders that Defendant Evans shall pay a total amount of disgorgement and prejudgment interest of $1,263,250.09.

**VI.**

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that a civil penalty pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] and Sections 209(d) and 209(e) of the Advisers Act [15 U.S.C. §§ 80b-9] is appropriate in this case. As the scheme outlined in the complaint (to which Defendant Evans has defaulted) involved fraud, the Court also orders that Defendant Evans shall pay a civil penalty in the amount of $60,000, within 60 days of the entry of this Final Judgment, to the United States Treasury. If timely payment is not made, additional interest shall accrue pursuant to 28 U.S.C. § 1961.

17

Payment must be made in one of the following ways: (1) Defendant Evans may make direct payment from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm; or (2) Defendant Evans may pay by certified check, bank cashier's check, or United States postal money order, made payable to the Securities and Exchange Commission and hand-deliver or mail to:

> Enterprise Services Center
> Accounts Receivable Branch
> HQ Bldg., Room181, AMZ-341
> 6500 South MacArthur Boulevard
> Oklahoma City, OK 73169

Payments by check or money order must be accompanied by a cover letter identifying Evans as a Defendant in this proceeding, and the file number of this proceeding; a copy of the cover letter and check or money order must be sent to Robert F. Schroeder, Senior Trial Counsel, Division of Enforcement, 950 East Paces Ferry Road, N.E., Suite 900, Atlanta, Georgia 30326.

## VII.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, pursuant to Rule 54(b), there is no just reason for delay in the in the entry of this final judgment against TKO, and the Clerk is directed to enter this judgment at this time. This Order is *nunc pro tunc* to August 3, 2015.

## VIII.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

Dated: *September 30,* 2015

Richard W. Story, Judge
United States District Court